## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## BEAUFORT DIVISION

| | | |
|---|---|---|
| Victor Manuel Garcia Espinoza, | ) | Civil Action No. 9:22-cv-1744 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Huntsman Tree Supplier, Inc. and Jack, | ) | **ORDER AND OPINION** |
| Peck d/b/a Jack Peck Trucking, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Plaintiff's motion to remand. (Dkt. No. 18). Both Defendants filed a response in opposition, (Dkt. Nos. 20, 21), and the Plaintiff replied, (Dkt. No. 26). For the reasons stated below, Plaintiff's motion to remand is **GRANTED**.

**I.     Background**

In March 2020, Plaintiff initiated this personal injury case against Green Goods Wholesale Nursery, Inc., a South Carolina Corporation, in the Court of Common Pleas in Jasper County, South Carolina. (Dkt. No. 18-2, ¶ 2). Plaintiff alleged that he was injured while working on the back of a flat-bed truck maneuvering trees into place at a jobsite. (*Id.*, ¶ 4). Specifically, Plaintiff alleged that, as he was holding a tree on the back of the truck, the driver moved the truck causing the tree to make direct contact with a power line, which electrocuted the Plaintiff. (*Id.*) In this initial complaint, Plaintiff only named Green Goods as a party. (*Id.*, ¶ 2).

In December 2020, Green Goods moved for summary judgment arguing that it was not involved in the delivery, loading, or unloading of the trees and that the sale and delivery of the trees were brokered by Huntsman Tree Supplier, Inc. and Jack Peck Trucking. (Dkt. No. 20-4 at 2-3). Shortly after this briefing, the South Carolina Circuit Court entered a consent order pursuant

to South Carolina Rule of Civil Procedure 40(j) striking the case from the trial docket but allowing the parties to continue discovery and file motions. (Dkt. No. 24-5 at 1). South Carolina Rule of Civil Procedure 40(j) allows cases to be restored upon a motion made within 1 year of the date stricken. S.C. R. Civ. P. 40(j). In November 2021, within a year of the 40(j) order, Plaintiff filed a motion to restore the case, which was granted in early 2022. (Dkt. Nos. 20-6, 20-7). Then in May 2022, Plaintiff amended the complaint adding defendants Huntsman Tree and Jack Peck. (Dkt. No. 2-8). Upon service of the amended complaint on Huntsman Tree and Jack Pack, Plaintiff dismissed Green Goods as a defendant. (Dkt. No. 20-9).

Jack Peck removed the case to this Court in June 2022, and Huntsman Tree consented to the removal. (Dkt. Nos. 1, 11). This removal took place over two years after Plaintiff's initial complaint against Green Goods but within 30 days of the service of the amended complaint upon Huntsman Tree and Jack Peck.

## II. Standard

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1).

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant." *Id.* § 1441(a). "Because removal jurisdiction raises significant federalism concerns, [a court] must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). "If federal jurisdiction is doubtful, a remand is necessary." *Id.* "The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Id.*

"Except as provided in subsection (c) [of 28 U.S.C. § 1446], if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). "A case may not be removed under subsection (b)(3) [of 28 U.S.C. § 1446] on the basis of jurisdiction conferred by section 1332 more than 1 year after the commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* § 1446(c)(1).

### III.  Discussion

Here, the parties do not dispute that they are diverse and that the amount in controversy exceeds $75,000. Rather, the only two issues before the court are whether filing the amended complaint to add Huntsman Tree and Jack Peck reset the removal window and whether Plaintiff acted in bad faith in order to prevent removal.

#### A.  Commencement of the Action

Huntsman Tree and Jack Peck argue that the Court should not consider the date of commencement of this action to be the date on which this action was initially filed in state court but should instead consider it to be the date on which the Plaintiff amended his complaint to add Huntsman Tree and Jack Peck as Defendants. Their argument that this action commenced on the date of the amended complaint is contrary to the view of nearly all courts addressing this issue.

Most courts that have considered whether, for purposes of removal, an action commenced upon the addition of a new party have answered the question in the negative. *Sizemore v. Auto-Owners Ins. Co.*, 457 F.Supp.3d 585, 591 (E.D. Ky. 2020) (collecting cases); *Sledz v. Flintkote Co.*, 209 F.Supp.2d 559, 563 (D. Md. 2002); *Pappas v. Space Exploration Techs. Corp.*, No. 20-

3

cv-900, 2020 WL 13369690, at *2 (M.D. Fla. Aug. 12, 2020). Those courts note that "the one-year clock in § 1446(c) starts to tick when the original complaint is filed, and this time limit does not reset for later-added defendants." *Sizemore*, 457 F.Supp.3d at 591 (cleaned up).

Because "[s]tate law determines when an action is commenced for removal purposes," *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 908 (6th Cir. 1993), the Court turns to a recent decision from this district.

Addressing this issue on slightly different facts, the district court, analyzing South Carolina law, concluded that "the addition of a new party fails to commence a new action." *Harnett v. Publix Super Markets, Inc.*, No. 20-cv-00939, 2021 WL 675571, at *3 (D.S.C. 2021). In *Hartnett*, the plaintiff, a citizen of South Carolina, initiated a premises liability action against Publix, a Florida corporation, and multiple nondiverse defendants. *Id.* at *1. A year after the initial complaint, the plaintiff added additional nondiverse defendants. *Id.* Shortly after filing the amended complaint, the plaintiff dismissed all the nondiverse defendants, leaving Publix as the only remaining defendant. *Id.* Publix removed the case based on diversity, and the plaintiff moved to remand because Publix removed the case more than one year after the commencement of the lawsuit. *Id.* at *2. Publix argued that the plaintiff's amended complaint that added new defendants commenced a new action for purposes of removal. *Id.* at *2. The district court rejected that argument and found that the case commenced on the date of the original complaint. *Id.* at *4. The district court reached this conclusion by relying on a South Carolina Court of Appeals decision that barred the plaintiff's claims against a defendant that was added after the expiration of the statute of limitations but found plaintiff's rights against the original defendants unaffected. *Id.* at *3 (citing *Cline v. J.E. Faulkner Homes, Inc.*, 359 S.C. 367, 371 n.2, 597 S.E.2d 27, 29 n.2 (S.C. Ct. App. 2004)). The district court reasoned that if the addition of a new defendant commenced a new action, then not only would the

4

claims against the later-added defendant have been barred by the statute of limitations, but the claims against all other parties would also have been barred. *Hartnett*, 2021 WL 675571, at *3.

Thus, unlike most cases addressing this issue, including the case here, where the removing defendant is the later-added defendant, the removing defendant in *Hartnett* was an original party to the underlying action. *Id.* at *1. Despite this distinction, the reasoning and conclusion from *Hartnett* still apply.

Accordingly, the court concludes that this action commenced on March 12, 2020, the date Plaintiff filed his original complaint.

### B. Bad Faith

"Although the Fourth Circuit has not deeply explored the contours of the bad faith exception, it is well settled that the plaintiff is the master of her complaint. *Holland v. CSX Transportation, Inc.*, No. 21-cv-00377, 2021 WL 448305, at *2 (S.D. W. Va. Sept. 28, 2021) (citing *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005)). Therefore, it "is not inherently bad faith to use strategy to defeat federal jurisdiction." *Brazell v. Gen. Motors, LLC*, No. 14-cv-04588, 2015 WL 1486932, at *4 (D.S.C. Mar. 30, 2015) (citing *Duck Outfitters v. Nationwide Mut. Ins. Co.*, No. 14-cv-00060, 2015 WL 540149, at *2 (E.D.N.C. Feb. 10, 2015)). "So a defendant alleging bad faith by a plaintiff bears an arduous burden that requires evidence of forum manipulation." *Holland*, 2021 WL 448305, at *3 (collecting cases).

When analyzing bad faith, other courts in this circuit and around the country have adopted the two-step framework outlined in *Aguayo v. AMCO Ins. Co.,* 59 F.Supp.3d 1225, 1275-77 (D. N.M. 2014). *See, e.g.*, *Holland*, 2021 WL 448305, at *3; *Mullins v. Rish Equipment Co.*, No. 21-cv-00347, 2021 WL 4448296, at *3 (S.D. W.Va. Sept. 28, 2021); *but see, e.g.*, *Dutchmaid Logistics, Inc. v. Navistar, Inc.*, No. 16-cv-0857, 2017 WL 1324610, at *9 (S.D. Ohio April 11,

5

2017) (finding the *Aguayo* test "has the potential to deter plaintiffs from dismissing defendants they realize are not necessary as well as force plaintiffs to request meaningless discovery to avoid the exception being exercised").

For the first step, a court must determine whether the plaintiff actively litigated the claims in state court. *Aguayo*, 59 F.Supp.3d at 1275. Failure to actively litigate is bad faith, but actively litigating creates a "rebuttable presumption of good faith." *Id.* at 1275. For the second step, if the plaintiff has actively litigated the case, then the defendant can attempt to overcome the presumption by presenting direct evidence that the plaintiff acted solely for the purpose of preventing removal. *Id.* at 1275-76. To rebut the good faith presumption, "[t]he Court wants a smoking gun or close to it." *Id.* at 1277. Merely pointing to the timing of events is insufficient to show bad faith on the part of the Plaintiff. *See Mullins*, 2021 WL 4448296, at *4 (citing *Dutchmaid*, 2017 WL 1324610, at *14).

The court in *Aguayo* adopted a "wide-open view of what constitutes active litigation." *Id.* at 1275. For example, "any non-token amount of discovery or other active litigation entitles the plaintiff to the presumption of good faith." *Mullins*, 2021 WL 4448296, at *3 (cleaned up).

Here, Huntsman Tree and Jack Peck have not met their burden in showing Plaintiff failed to litigate its claims against Green Goods. Huntsman Tree and Jack Peck have not pointed to any evidence that Plaintiff failed to take discovery from Green Goods.[1] Huntsman Tree and Jack Peck

---

[1] The Court's inspection of the state court docket shows that Plaintiff failed to respond to Green Goods discovery requests for over five months. (Green Goods' Motion to Compel at 1-2, *Espinoza v. Green Goods Wholesale Nursery, Inc.*, No. 2020-CP-27-00117 (Ct. C.P. Jasper Cnty., S.C.). The Court, however, could not determine from the public docket whether Plaintiff eventually responded to Green Goods discovery requests or whether Plaintiff served discovery requests on Green Goods. Nor could the Court determine whether there was any genuine settlement discussion between the parties. Without such information the Court could not find that Plaintiff failed to litigate its claims against Green Goods.

mainly rely on the timing and procedural history of the case to argue Plaintiff acted in bad faith to prevent removal. (Dkt. No. 20 at 6-7; Dkt. No. 21 at 5-6). Because Huntsman Tree and Jack Peck did not point to any other facts suggesting bad faith, they did not meet their "arduous burden" to prevent remand.

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion to Remand (Dkt. No. 18). This case is **REMANDED** to the Charleston County Court of Common Pleas.

                                                                                   _s/ Richard Mark Gergel_
                                                                                    Richard Mark Gergel
                                                                                    United States District Judge

August 11, 2022
Charleston, South Carolina